**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| AMERICANS FOR PROSPERITY FOUNDATION<br>1310 North Courthouse Road, Suite 700<br>Arlington, VA 22201,<br><br>              Plaintiff,<br><br>       v.<br><br>FEDERAL TRADE COMMISSION<br>600 Pennsylvania Avenue, NW<br>Washington, D.C. 20580<br><br>              Defendant. | Civil Action No. 21-3207 |

## COMPLAINT

1.     Plaintiff Americans for Prosperity Foundation ("AFPF") brings this action under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, requesting access to agency records maintained by Defendant Federal Trade Commission ("FTC").

2.     AFPF seeks records related to the FTC's decision to discard the decades-old consumer welfare standard. These records could reveal the agency's arbitrary decision-making, its present lack of standards for antitrust enforcement, its possible coordination with preferred businesses to target disfavored ones, and its desire to advance anti-business priorities of political activists. To date, the FTC has not responded to AFPF's FOIA request.

3.     The records at issue have significant value that serves the public interest. The FTC's aggressive agenda on antitrust enforcement is out of step with mainstream legal thinking and is best regarded as anti-consumer, anti-innovation, and harmful to economic growth and prosperity. The public has a compelling need to understand what the agency is doing, why it is

doing it, and what the Commission has chosen as working law in the wake of discarding the consumer welfare standard.

## JURISDICTION AND VENUE

4.     Jurisdiction is asserted pursuant to 28 U.S.C. § 1331 and 5 U.S.C. § 552(a)(4)(B).

5.     Venue is proper pursuant to 28 U.S.C. § 1391(e) and 5 U.S.C. § 552(a)(4)(B).

## PARTIES

6.     Plaintiff AFPF is a 501(c)(3) nonprofit organization committed to educating and training Americans to be courageous advocates for the ideas, principles, and policies of a free and open society.  Among other things, AFPF believes the consumer welfare standard is a strong protection against broad, abusive antitrust enforcement across government agencies, including the FTC.  AFPF is currently investigating the FTC's recent efforts to claim broader power to enforce antitrust and trade regulations against politically disfavored businesses.  AFPF routinely files and litigates FOIA requests.

7.     Defendant FTC is an agency within the meaning of 5 U.S.C. § 552(f)(1).  The FTC has possession, custody, and control of agency records to which AFPF seeks access and that are the subject of this Complaint.

## FACTS

**I.     The FTC's Rescission of the 2015 Antitrust Policy Statement**

8.     In 2015, on a bipartisan basis, the FTC issued a "Statement of Enforcement Principles" concerning antitrust principles that would guide the agency's exercise of "its statutory authority to take action against 'unfair methods of competition' prohibited by Section 5 of the FTC Act."  *See* Fed. Trade Comm'n, *FTC Issues Statement of Principles Regarding Enforcement of FTC Act as a Competition Statute* (Aug. 13, 2015), *available at* https://bit.ly/3Dk1a08.  This

statement affirmed the FTC's commitment to using the "consumer welfare standard" and "rule of reason" as guides to its enforcement powers.

9.      On July 2, 2021, the FTC announced it had rescinded the 2015 Section 5 Policy Statement.  *See* Fed. Trade Comm'n, *FTC Rescinds 2015 Policy that Limited Its Enforcement Ability Under the FTC Act* (July 1, 2021), *available at* https://bit.ly/3xHlreP.

10.      In a published statement, Chair Lina M. Khan explained, "[i]n the coming months, the [FTC] w[ould] consider whether to issue new guidance or to propose rules that will further clarify the types of practices that warrant scrutiny" under Section 5.  *See* Statement of Chair Lina M. Khan, *et al.*, on the Withdrawal of the Statement of Enforcement Principles Regarding "Unfair Methods of Competition Under Section 5 of the FTC Act (July 1, 2021), *available at* https://bit.ly/3rzvvVU.  Chair Khan further noted the FTC, "[i]n the meantime, . . . [would] exercise responsibility [for] its prosecutorial discretion . . . consistent with legal precedent."  *Id.*

11.      Shortly thereafter, President Biden issued Executive Order 14036, which "encourage[d]" the United States Attorney General, and the Chair of the FTC to "review the horizontal and vertical merger guidelines and consider whether to revise those guidelines."  86 Fed. Reg. 36,987 (July 14, 2021).

12.      The FTC appeared to respond to Executive Order 14036 when it announced it would meaningfully adjust its merger review process:

> For deals that we cannot fully investigate within the requisite timelines, we have begun to send standard form letters alerting companies that the FTC's investigation remains open and reminding companies that the agency many subsequently determine the deal was unlawful.  Companies that choose to proceed with transactions that have not been fully investigated are doing so at their own risk.

Fed. Trade Comm'n, *Adjusting merger review to deal with the surge in merger filings* (Aug. 3, 2021), *available at* https://bit.ly/3IbiDLS.

13.     With these actions, the FTC unsettles parties who choose to merge in compliance with the statute.  The FTC seeks to chill or slow mergers by threatening to challenge consummated mergers—perhaps even in retaliation against companies that have the temerity to exercise their legal rights.  The Hart-Scott-Rodino Act merger-review process was intended to avoid such disruptive actions, and thus it is reasonable to expect such a development will cause uncertainty in the market.  Commissioner Christine Wilson suggested as much in her dissenting statement.  *See* Statement of Comm'r Christine S. Wilson Regarding the Announcement of Pre-Consummation Warning Letters (Aug. 9, 2021), *available at* https://bit.ly/3lozLDO.

14.     The FTC's novel assertion of authority in the face of congressionally imposed time-limits—and its threat to engage in routine post-consummation challenges—should not go unchecked.  The American people deserve transparency.

## II.   The FTC's Response to *AMG Capital Management LLC v. Federal Trade Commission*

15.     Concurrent with its decision to rescind the 2015 Section 5 Policy Statement, the FTC passed revisions to its rulemaking procedures designed to grapple with the United States Supreme Court's landmark decision in *AMG Capital Management, LLC v. Federal Trade Commission*, 141 S. Ct. 1341 (2021).  The *AMG* decision bars the FTC from demanding monetary relief from businesses under Section 13(b) of the FTC Act.

16.     Now, however, the FTC has stated, "[i]n light of [the *AMG*] decision," it would "seek redress, damages, penalties, and other relief from wrongdoers" under the "Trade Regulation Rules – also referred to as the Magnuson-Moss Rules[.]"  Fed. Trade Comm'n, *FTC Votes to Update Rulemaking Procedures, Sets Stage for Stronger Deterrence of Corporate Misconduct* (July 1, 2021), *available at* https://bit.ly/31hKfxJ.

III.   **AFPF's October 14, 2021 FOIA Request**

17.      By letter, dated October 14, 2021, AFPF submitted a FOIA request to the FTC

seeking access to two categories of records:

1.   Any policies or guidance that replace the 2015 Section 5 policy statement
     concerning unfair methods of competition;

2.   All communications, memoranda, or other documentation regarding:
     a.   the decision to replace the 2015 Section 5 policy statement concerning
          unfair methods of competition;
     b.   the withdrawal of merger guidelines;
     c.   any plans or policy to replace the merger guidelines;
     d.   adjustments to merger review announced on August 3, 2021;
     e.   [t]he pre-consummation warning letters announced in an attached to the
          FTC's August 3, 2021 blog post on merger review;
     f.   the FTC's authority to send pre-consummation warning letters or take
          the actions described in the letters;
     g.   the FTC's plans to continue to seek monetary relief in response to the
          *AMG* decision, including communications with the Department of
          Justice and/or members of Congress or their staff regarding H.R. 2668.

**Exhibit 1** at 1–2 (internal footnotes omitted).

18.      AFPF identified the relevant time period of its request as "February 1, 2021, to the

present." *Id.* at 2.

19.      AFPF defined the term "present" as "the date on which the agency begins it search

for responsive records." *Id.* at 2 n.10.

20.      AFPF defined the term "record" as "any medium of information storage in the form

and format maintained by the agency at the time of the request." Ex. 1 at 1 n.3.  AFPF explained

"[i]f any portion of a 'record' . . . is responsive to [its] request, then [the FTC] should process and

disclose the record in its entirety." *Id.*  Thus, "[i]f [the FTC] consider[ed] a medium of information

storage to contain multiple records that it believe[d] c[ould] be segmented on the basis of the

subject-matter of scope of AFPF's request," it must process all potentially segmented records as

responsive.  *Id.*

5

21.     Relatedly, AFPF clarified it sought "the entirety of any email chain, any portion of which contains an individual email message responsive to [AFPF's] request[.]" *Id.* at 2.

22.     AFPF further clarified it did not seek "daily news clippings or other mass mailings unless there is commentary related to them." *Id.*

23.     AFPF requested the FTC advise AFPF if the agency "identifies responsive records that it deems outside its legal control (*e.g.*, congressional records)[.]" *Id.*

24.     AFPF requested a public interest fee waiver and classification as a representative of the news media for fee purposes. *Id.* at 2–3.

25.     By letter, dated October 29, 2021, the FTC acknowledged it had received AFPF's FOIA request and assigned it tracking number FOIA-2022-00066. *See* **Exhibit 2**.

26.     The FTC failed to indicate whether it had placed AFPF's request into a "simple" or "complex" processing queue and also failed to provide an estimated date of completion. *See id.*

27.     On or about November 8, 2021, representatives of the FTC and AFPF discussed various matters related to the processing of AFPF's FOIA request, including the FTC's obligation to consult with the agency's subject-matter experts to identify employees or components likely to be relevant records custodians.

28.     By letter, dated November 10, 2021, the FTC invoked "unusual circumstances" to extend its response deadline by ten working days. *See* **Exhibit 3**.

29.     To date, the FTC has not made any determinations on AFPF's fee-related requests.

30.     To date, the FTC has not provided any further substantive update on the processing of AFPF's request.  It has neither issued a final determination nor produced any responsive records.

## COUNT I
## Violation of the FOIA: Failure to Comply with Statutory Requirements

31.     AFPF repeats all of the above paragraphs.

32.     The FOIA requires an agency to accept and process any request for access to agency records that (a) "reasonably describes such records," and (b) "is made in accordance with published rules stating the time, place, fees, . . . and procedures to be followed[.]"  5 U.S.C. § 552(a)(3)(A).

33.     The FOIA also requires an agency to respond to valid requests within twenty business days or, in "unusual circumstances," within thirty business days.  *Id.* § 552(a)(6)(A)–(B).

34.     If an agency requires additional time to process a request, the FOIA mandates that it provide the requester with "an opportunity to arrange . . . an alternative time frame for processing the request[.]"  *Id.* § 552(a)(6)(B)(ii).

35.     AFPF's FOIA request seeks access to agency records maintained by the FTC.

36.     AFPF's FOIA request reasonably describes the records sought and otherwise complies with the FOIA and applicable agency regulations.

37.     The FTC has failed to issue a final determination on or promptly produce agency records responsive to AFPF's FOIA request within the applicable statutory time limits.

38.     The FTC has also failed to comply with the FOIA because it never "arrange[d] . . . alternative time frame[s]" for responding to AFPF's request, never provided an estimated date of completion, and never actively invited AFPF to negotiate "alternative" response deadlines.

39.     AFPF has exhausted its administrative remedies under 5 U.S.C. § 552(a)(6)(C).

## **RELIEF REQUESTED**

WHEREFORE, Plaintiff AFPF respectfully requests and prays this Court:

a.     Order Defendant FTC to process AFPF's FOIA request and issue a final determination within 20 business days of the date of the Order;

b.     Order Defendant FTC to produce all agency records responsive to AFPF's FOIA request promptly upon issuing the final determination;

    c.       Maintain jurisdiction over this case until Defendant FTC complies with the Order and, if applicable, adequately justifies its treatment of all responsive records;

    d.       Award AFPF its costs and reasonable attorney fees incurred here pursuant to 5 U.S.C. § 552(a)(4)(E); and

    e.       Grant such other relief as the Court may deem just and proper.

Dated: December 8, 2021          Respectfully submitted,

                    */s/ Ryan P. Mulvey*
                    Ryan P. Mulvey
                    D.C. Bar No. 1024362
                    Eric R. Bolinder
                    D.C. Bar No. 1028335

                    AMERICANS FOR PROSPERITY FOUNDATION
                    1310 North Courthouse Road, Suite 700
                    Arlington, VA 22201
                    Telephone: (571) 444-2841
                    rmulvey@afphq.org
                    ebolinder@afphq.org

                    *Counsel for Plaintiff AFPF*