UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| AMERICANS FOR PROSPERITY FOUNDATION,<br><br>*Plaintiff*,<br><br>v.<br><br>FEDERAL TRADE COMMISSION,<br><br>*Defendant*. | Civil Action No. 21-3207 (ACR) |

## PRE-MOTION JOINT STATEMENT

Pursuant to the Court's July 7, 2023 Minute Order, Plaintiff Americans for Prosperity Foundation ("AFPF") and Defendant Federal Trade Commission ("FTC"), through their respective undersigned counsel, hereby submit this pre-motion joint statement regarding the FTC's request for a "claw back" order or, in the alternative, for a protective order, in this Freedom of Information Act ("FOIA") case. The following details the parties' respective positions and basis for their disagreement:

1

## I. FTC'S POSITION[1]

*Background.*  In July 2022, the FTC produced a document responsive to AFPF's FOIA request, (the "FTC Record") which inadvertently disclosed unredacted attorney work-product and deliberative process material (the "Disclosure").  Specifically, the FTC Record comprises an email chain and the Disclosure comprises four unredacted paragraphs in an email at the very bottom of that largely redacted email chain.  In these privileged paragraphs, the Acting Deputy General Counsel of the Consumer Financial Protection Bureau ("CFPB") initiates a conversation with FTC's Deputy General Counsel regarding potential actions to pursue in anticipation of litigation—specifically FTC amicus support for CFPB in ongoing and future litigation in a pending CFPB case concerning litigation issues of common interest to both agencies.

The FTC discovered this disclosure in late January 2023 and, after confirming its inadvertent release, reached out to AFPF a month later to request it be returned and replaced with a corrected version of the FTC record provided to AFPF.  Since then, AFPF has declined to return the FTC Record and destroy all copies of the same.  The FTC then asked AFPF to agree, alternatively, to entry of a protective order to protect the Disclosure against further dissemination and use pending resolution of all claims in this case.  AFPF declined and additional efforts to meet and confer did not change AFPF's position.  Thus, the FTC, not wanting to waive its claims to

---

[1]  In AFPF's section below, AFPF objects to the FTC's decision to provide this Court with a comprehensive position statement yet, also argues that the FTC has failed to take reasonable steps to rectify its inadvertent disclosure.  Indeed, while the FTC attempted to include more detail regarding the merits of the parties' dispute in the prior two motions it drafted for leave to enter a briefing schedule, AFPF removed that language before it would join in those motions.  The Court then denied the parties' two prior joint motions for briefing schedule so that the parties could address the merits of their dispute in more detail.  Thus, the FTC is not trying to circumvent any rules of motion practice, but is merely taking every reasonable step necessary to seek leave to file a claw back motion that would rectify its inadvertent disclosure, including providing the Court with more information to support its request for leave to file that motion.

privilege over the Disclosure, believes it imperative to seek relief from this Court in the form of an order to claw back the FTC Record or, alternatively, for entry of a protective order. The authority on which the FTC relies in seeking such relief includes Federal Rule of Evidence ("Rule") 502, and this Court's "inherent authority to control and preserve the integrity of [its] judicial proceedings." *See Pub. Citizen Health Research Grp. v. F.D.A.*, 953 F. Supp. 400, 404 (D.D.C. 1996) (quoting *In re Shell Oil Refinery*, 143 F.R.D. 105, 109 (E.D. La. 1992)).

*Rule 502.* Defendant anticipates that AFPF is likely to argue that Rule 502 does not apply "straightforwardly" to FOIA. But nothing in the text of Rule 502 precludes its application to FOIA litigation, where, as here, the Disclosure at issue is attorney work-product. In addition, the FTC, via declaration, will show that the Disclosure was inadvertent given that the same Disclosure was properly redacted and produced in five other documents, marked responsive to AFPF's FOIA request. The FTC will further provide testimony explaining in detail the steps it took to prevent the inadvertent disclosure, including its use of Relativity software and multiple levels of review. Third, the FTC will detail the prompt and reasonable steps it took within a short month to identify, confirm, and seek to rectify the inadvertent disclosure by reproducing the FTC Record with redactions and asking AFPF to return and destroy the older version containing the inadvertent Disclosure.

Finally, fairness counsels in favor of a claw back order. Protection of the FTC's Disclosure, which, as stated above, was inadvertent, will not prejudice AFPF, but the lack of protection will prejudice the FTC. Should protection not be granted, AFPF might use the Disclosure to argue that the FTC, correspondingly, waived privilege in other similar materials—though it did not—in carefully and intentionally produced documents containing proper redactions. The result of such arguments might thus unfairly extend the consequences of this inadvertent disclosure beyond the

scope of the Disclosure itself—a prejudice which Rule 502 specifically aims to combat. *See* Fed. R. Evid. 502(d).

On the other hand, AFPF will face little to no prejudice if a claw back order is granted, as AFPF will still have to litigate the propriety of any other withholding applied to the same material inadvertently disclosed in the FTC Record, along with any other withholdings AFPF does not agree to waive, and at no sooner point than on summary judgment, as in any other FOIA proceeding. In addition, the Disclosure, which is now under temporary protection by this Court, has not, outside the one production to AFPF, been shared publicly. Thus, it would be neither unfair nor unrealistic to grant the FTC's request for a claw back order to protect against its further dissemination and use publicly and in this case.

***Protective Order.*** Alternatively, while there is nothing in the text of the FOIA that provides for protective orders of inadvertently produced documents, absent express authority to the contrary, this Court can rely on its inherent authority to issue such orders, and AFPF does not dispute that this Court has such authority. *See Pub. Citizen Health Research Grp. v. F.D.A.*, 953 F. Supp. 400, 404 (D.D.C. 1996) (quoting *In re Shell Oil Refinery*, 143 F.R.D. 105, 109 (E.D. La. 1992); *see also Rocky Mountain Wild, Inc. v. U.S. Forest Service*, 56 F.4th 913, 930-31 (10th Cir. 2022). When deciding whether to enter a protective order, in FOIA cases Courts look to whether the order serves to control and preserve the integrity of the judicial proceedings and balance the scales.[2] *See id.* Here, this standard is met because the Disclosure contains work-product and

---

[2]  AFPF relies on a standard that one court in the Northern District of California used when asked to apply a permanent protective order to material inadvertently disclosed in a FOIA production. *See* AFPF's Position, § Legal Standards (citing *Wilson v. Fed. Commc'ns Comm'n,* Civ. A. No. 21-0895 (RMM), 2022 WL 4245485, at *15 (D.D.C. Sept. 15, 2022) (citing *Sierra Club v. Env't Prot. Agency*, 505 F. Supp. 3d 982, 991 (N.D. Cal. 2020))). Here, however, Defendant is asking for a temporary protective order pending resolution of all claims in this case, so this standard does not apply. Moreover, even if *Sierra Club*, applies, the facts in that case are

deliberative process material the further disclosure of which will lead to foreseeable harm and, as previously discussed, AFPF cannot establish that such temporary protective order would infringe on its interests. Thus, the protective order should be granted.

First, the FTC, via declaration, will show that the Disclosure contains attorney work product and deliberative process material the further disclosure of which will lead to foreseeable harm by specifically chilling the flexibility with which attorneys at the FTC assess, consider, and discuss weaknesses of future litigation, out of fear that their mental impressions, assessments, and thought processes, if publicly disclosed, would be subject to public scrutiny. Likewise, the further disclosure of the deliberative process material will also cause foreseeable harm to the quality of the FTC's decisions by implicating two interests protected by the deliberative process privilege: candor and confusion of the Agency's position on controversial issues.

Second, protecting against further disclosure will balance the scales. As previously discussed, the FTC will be unfairly prejudiced if the Disclosure is not temporarily protected subject to resolution of all claims in this case. AFPF, by comparison, will suffer no such harm. In addition, while AFPF may assert that the protective order will harm its interests, including its First Amendment rights, a temporary protective order like the one requested in this case is not the type which requires exacting First Amendment scrutiny. *Seattle Times Co. v. Rhinehart*, 467 U.S. at 34 (1984) ("[J]udicial limitations on a party's ability to disseminate information . . . in advance of trial implicates the First Amendment rights of the restricted party to a far lesser extent than would restraints on the dissemination of information in a different context."). If the Court ultimately

---

distinguishable, where, unlike in this case, the inadvertent disclosure was already largely disseminated. Likewise, *100Reporters v. Dep't of State*, is distinguishable because the government failed to even begin to support its request seeking the return of material it later identified to be protected. *See 100Reporters v. Dep't of State*, 602 F. Supp. 3d 41, 84 (D.D.C. 2022).

determines that the information contained in the Disclosure is not covered by Exemption 5 at the time all claims in this case are resolved, then the Court may order the FTC record disclosed and AFPF will have spent no additional time waiting for this ruling than under any other normal FOIA proceedings where there was no inadvertent disclosure. *See Public Citizens Health Research Grp.*, 953 F. Supp. at 404. In addition, although AFPF may argue that nothing under FOIA allows for an agency to control with whom a requester can share records, once those records are disclosed, for this principle to apply, the disclosure at issue must have been intentional, and here it was not.

***Conclusion.***  Thus, the FTC plans to establish that it is entitled to a claw back Order directing AFPF to return or destroy all Contested Records in this case, or, alternatively, that FTC is entitled to a Protective Order barring AFPF's further dissemination and use of the Inadvertent Disclosure pending final resolution of all claims in this case.

## II.     AFPF's POSITION

***Introduction.***  Over a year ago, on July 29, 2022, the FTC voluntarily and officially made an interim production of agency records responsive to the FOIA request at issue in this case. One of those records was an email chain reflecting, in relevant part, communications between another federal agency and the FTC about a recent decision in a lawsuit to which the FTC was not party. That same communication also involved a short inquiry about a second lawsuit involving yet another federal agency. The now-contested portion of this record was unredacted, and there was nothing in the FTC's determination letter—let alone the record itself—to suggest it should have been withheld under any relevant FOIA exemption. For seven months, the record was freely accessible to all AFPF employees. Then, on February 28, 2023, the FTC contacted AFPF claiming its release of the contested record was somehow inadvertent. The agency asked AFPF to sequester and destroy all copies of the record. AFPF declined to do so, but it agreed to keep the contested

record secure, as a professional courtesy, until the FTC moved for a "claw back" order. But the agency failed to move for such relief with any sense of urgency. Despite AFPF's consistent refusal to destroy or return the record, the FTC waited another three months before filing—jointly with AFPF—a motion for entry of a briefing schedule. *See* ECF No. 23. The FTC's lack of diligence in seeking the relief it desires should not be rewarded.

***Preliminary Objections.*** Plaintiff AFPF objects to the format of this filing. Following entry of the Court's July 7, 2023 Minute Order, AFPF informed the FTC of AFPF's position that this joint statement should be "concise" and focus on articulating the parties' points of disagreement, rather than offering the Court "an extended discussion of either party's position with lengthy supporting argument," which instead "should be kept to briefing." The FTC refused to adopt this approach. Under protest, and to counter the FTC's presentation of arguments, AFPF provides here a more fulsome explanation of its position than would otherwise be appropriate. In sum, AFPF objects to the FTC's litigation strategy. There is no evidence before the Court; neither party has entered declarations with factual testimony; and the FTC relies on mere speculation and conclusory legal statements to advance its position. Although the FTC would likely suggest it is trying to avoid prejudicing its position, in fact, it is attempting to litigate its motion in a joint statement, which entails circumvention of relevant procedural rules and well-established practice.

***Legal Standard.*** The "FOIA does not provide for protective orders or the compelled return or destruction of inadvertently produced documents." *Wilson v. Fed. Comm'cns Comm'n*, No. 21-0895, 2022 WL 4245485, at *5 (D.D.C. Sept. 15, 2022). At the same time, some courts have chosen to exercise their inherent equitable power to prohibit the continued dissemination of a record in limited circumstances when an agency can demonstrate a record was inadvertently disclosed, *see Wilson*, 2022 WL 4245485 at *5, and there is "serious and non-speculative harm

likely to result" from continued possession and use by a requester. *Id.* at *15 (cleaned up). A court's inherent power "must be exercised with restraint and discretion" and within constitutional limits. *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44 (1991). It must reflect "a reasonable response to the problems and needs that provoke it." *Degen v. United States*, 517 U.S. 820, 823–24 (1996). An agency's mere claim of mistaken disclosure, or the applicability of privilege (without further demonstration of foreseeable harm), is not enough to carry the day and defeat the underlying principle that forcing a FOIA requester "to return materials . . . obtained through no unlawful or improper action" is an "extraordinary step" that should not be granted as a matter of course. *100Reporters v. Dep't of State*, 602 F. Supp. 3d 41, 84 (D.D.C. 2022); *see Sierra Club v. Envtl. Prot. Agency*, 505 F. Supp. 3d 982, 991 (N.D. Cal. 2020) (denying FOIA "claw back" motion because "mistakes by litigants have consequences").

*Mootness.* The FTC officially and voluntarily disclosed the contested record over a year ago. As the agency concedes, it took seven months for it to "discover" and notify AFPF that this disclosure was purportedly "inadvertent." And now, after another five months, the FTC has still yet to file any sort of motion. The unavoidable fact at the heart of the parties' dispute is that AFPF never challenged (and does not challenge) the treatment of the initial email message in the chain at issue, which the FTC retroactively asserts is "privileged." There is therefore no basis, under the FOIA, for the Court to intervene. On AFPF's view, the agency's official July 2022 interim production renders moot any delayed attempt to assert Exemption 5.

***Constitutional Limitations.*** The exercise of this Court's inherent equitable power—especially as it pertains to the return, destruction, or limitation of AFPF's use of a lawfully obtained agency record—is circumscribed by the Constitution and controlling caselaw that bars prior restraints on the exercise of free speech. AFPF's right to make use of information it has obtained

likely to result" from continued possession and use by a requester. *Id.* at *15 (cleaned up). A court's inherent power "must be exercised with restraint and discretion" and within constitutional limits. *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44 (1991). It must reflect "a reasonable response to the problems and needs that provoke it." *Degen v. United States*, 517 U.S. 820, 823–24 (1996). An agency's mere claim of mistaken disclosure, or the applicability of privilege (without further demonstration of foreseeable harm), is not enough to carry the day and defeat the underlying principle that forcing a FOIA requester "to return materials . . . obtained through no unlawful or improper action" is an "extraordinary step" that should not be granted as a matter of course. *100Reporters v. Dep't of State*, 602 F. Supp. 3d 41, 84 (D.D.C. 2022); *see Sierra Club v. Envtl. Prot. Agency*, 505 F. Supp. 3d 982, 991 (N.D. Cal. 2020) (denying FOIA "claw back" motion because "mistakes by litigants have consequences").

*Mootness.* The FTC officially and voluntarily disclosed the contested record over a year ago. As the agency concedes, it took seven months for it to "discover" and notify AFPF that this disclosure was purportedly "inadvertent." And now, after another five months, the FTC has still yet to file any sort of motion. The unavoidable fact at the heart of the parties' dispute is that AFPF never challenged (and does not challenge) the treatment of the initial email message in the chain at issue, which the FTC retroactively asserts is "privileged." There is therefore no basis, under the FOIA, for the Court to intervene. On AFPF's view, the agency's official July 2022 interim production renders moot any delayed attempt to assert Exemption 5.

***Constitutional Limitations.*** The exercise of this Court's inherent equitable power—especially as it pertains to the return, destruction, or limitation of AFPF's use of a lawfully obtained agency record—is circumscribed by the Constitution and controlling caselaw that bars prior restraints on the exercise of free speech. AFPF's right to make use of information it has obtained

under the FOIA, especially as a representative of the news media (as defined by the FOIA), would be seriously infringed by either a "claw back" order or, alternatively, a so-called "protective order" that seeks to limit further dissemination of the contested record pending the termination of this case.  The Supreme Court has made clear that courts should not restrict the dissemination of information obtained outside of pretrial discovery.  *See Seattle Times Company v. Rhinehart*, 467 U.S. 20, 31, 37 (1984).  This includes records disclosed under the FOIA because production under the FOIA is not analogous to discovery.  That a disclosure might have been inadvertent does not change the First Amendment calculus.  *See The Florida Star v. B.J.F.*, 491 U.S. 524, 536–38 (1989).  AFPF lawfully come into possession of information that it is lawfully entitled to possess and disseminate.

***Justifications for "Claw Back" or a "Protective Order."***  AFPF does not believe the FTC will be able to identify any serious and non-speculative rationale for the relief it intends to seek in its motion.  To date, the agency has only pointed to generic harms that might result from AFPF's continued possession and use of the contested record.  It is undisputed that the contested record does not implicate interests underlying any non-discretionary exemptions—such as Exemption 1 or Exemption 3—let alone non-governmental privacy or confidentiality interests protected by Exemptions 4, 6, or 7(C).  The FTC's intended arguments about "fairness" are unavailing and merely underscore its primary motivation for demanding the return of the contested record— namely, hiding evidence of its heavy-handed and unjustified application of FOIA exemptions.  Given the clear First Amendment implications of a "claw back" or "protective order," the prejudice to AFPF is unmistakable.

***FRE 502.***  Federal Rule of Evidence 502 does not apply in the FOIA context, at least as far as records responsive to a request in litigation are concerned.  The contested record, for

example, is not a communication involving opposing counsel concerning the representation of the FTC in this matter, nor is it a document released as part of pretrial discovery. At base, Rule 502 does not apply because the standard for withholding information under the FOIA is distinct from the standard for non-disclosure during discovery. Under FOIA, privilege—or the mere assertion of privilege—is not enough to keep an agency record non-public; a further demonstration of foreseeable harm beyond the technical requirements for an exemption or privilege is essential. And even if Rule 502 did apply—which it does not—the FTC's disclosure of the contested record is a waiver: AFPF does not believe the agency will be able to meet its burden of demonstrating that (1) its July 2022 interim production was, in relevant part, inadvertent; (2) the agency took reasonable steps to prevent such inadvertent disclosure; and (3) it took prompt and reasonable steps to rectify its supposed mistake.

*Exemption 5.* On AFPF's view, whether the contested record is protected by Exemption 5 is hardly dispositive. Indeed, the question of whether an allegedly inadvertently disclosed record is exempt is distinct from the issue of whether a court should order a "claw back" and grant an agency a mulligan. Regardless, here, AFPF does not believe the contested record is protected by Exemption 5. AFPF does not believe the FTC will be able to meet its burden to demonstrate that the technical requirements for the attorney-work product and deliberative-process privileges are satisfied and that there is, moreover, reasonably foreseeable harm in continued disclosure.

*Conclusion*. AFPF does not believe the FTC is entitled to the relief it seeks. Neither a "claw back" order nor a "protective order" is justified. Due to the length and complexity of the issues at hand, AFPF further believes that, in addition to briefing, the Court could possibly benefit from an oral hearing, if the FTC were to actually move for any relief.

### III.     SUMMARY OF ISSUES IN DISPUTE

The parties disagree as to the following issues:

1. The precise articulation of the relevant legal standard for the FTC's intended motion for "claw back" order or, in the alternative, for a "protective order."

2. Whether under the applicable legal standard, the FTC can demonstrate that either a "claw back" or "protective order" is justified, given the circumstances of this case.

2. Whether the FTC's reliance on Federal Rule of Evidence 502 applies in the FOIA context, and whether the FTC can, in any event, meet its burden under FRE 502(b) to avoid waiver—*i.e.*, show its release of the contested record was inadvertent, it took reasonable steps to prevent disclosure, and it promptly took reasonable steps to rectify its error.

3. Whether the contested record is protected under Exemption 5 and whether there is foreseeable harm likely to result in its continued disclosure, and the degree to which either showing must be met to warrant the FTC's requested relief.

4. Whether the First Amendment's protection against prior restraint on speech limits the Court's inherent equitable authority in this case.

\*     \*     \*

Date: July 28, 2023                                         Respectfully submitted,

*/s/ Ryan P. Mulvey*                                        MATTHEW M. GRAVES, D.C. Bar. #481052
Ryan P. Mulvey                                              United States Attorney
D.C. Bar No. 1024362
Lee A. Steven                                               BRIAN P. HUDAK
D.C. Bar No. 468543                                         Chief, Civil Division

AMERICANS FOR PROSPERITY                                    By:   */s/ Anna D. Walker*
FOUNDATION                                                  ANNA D. WALKER
1310 North Courthouse Road, Suite 700                       Assistant United States Attorney
Arlington, VA 22201                                         601 D Street, N.W.
Telephone: (571) 444-2841                                   Washington, District of Columbia 20530
rmulvey@afphq.org                                           Telephone: (202) 252-2567
lsteven@afphq.org                                           anna.walker@usdoj.gov

*Counsel for Plaintiff AFPF*                                *Counsel for the United States of America*